UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

MICHAEL CARROLL COLEMAN

CIVIL ACTION

VERSUS

NO. 11-652-JJB

CITY OF PORT ALLEN CHIEF OF
POLICE INDIVIDUALLY AND IN HIS OFFICIAL
CAPACITY, FRED SMITH, CHIEF, AND
OFFICER JASMIONE CLARK

## RULING ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on Motions for Summary Judgment by Defendants the City of Port Allen Chief of Police in his official capacity ("the City of Port Allen") and Fred Smith, Chief of Police in his individual capacity ("Chief Smith") (Doc. 31) and Defendant Officer Jasmione Clark ("Officer Clark") (Doc. 32). Plaintiff Michael Carroll Coleman ("Coleman" or Plaintiff) has filed a combined opposition (Doc. 36), to which the City of Port Allen and Chief Smith (Doc. 58) and Officer Clark (Doc. 55) have filed replies. For the reasons herein, the Court GRANTS in part and DENIES in part the Defendants' motions for summary judgment. (Doc. 31-1); (Doc. 32-1).

I.

On September 22, 2010, Coleman, two unidentified passengers, and Coleman's nine-month pregnant daughter ("Ms. Coleman") were en route to a medical clinic because Coleman was "suffering from a diabetic spell." (Doc. 2, ¶ 4). It is undisputed that Officer Clark stopped the truck for a tint violation and that Ms. Coleman was driving with a suspended license. However, there is a factual dispute as to whether the insurance on the vehicle was current. Officer Clark ordered the truck to be towed and he waited for the tow truck to arrive. (Doc. 31,

1

Ex. C). While Officer Clark was waiting for the tow truck to arrive, the Ms. Coleman walked across the street to a restaurant, where she called her step-mother to pick her up. (Doc. 31, Ex. B). Coleman left the scene on foot, while the two other passengers waited nearby for rides of their own. (Doc. 32-1, Ex. A.) Officer Clark testified that the stop was conducted approximately 400 yards from Coleman's house. *Id*.

According to Coleman's complaint, he allegedly "went into a diabetic shock which resulted in a diabetic coma wherein [he] ended up lying under a bush in the back of Golden Corral wherein an employee had to call 911." (*Id.*, ¶ 6). Coleman was allegedly robbed, left without identification, and was admitted to Baton Rouge General Hospital Intensive Care Unit in critical condition. (*Id.*) The hospital records indicate that he was admitted on later that day, on September 22, 2010, at 6:33 p.m. (Doc. 31, Ex. D). The records also show that while his blood work was consistent with diabetic ketoacidosis, he also tested positive for cocaine and benzodiazepines. Additionally, it is worth noting that the only Golden Corral in the Baton Rouge metropolitan area is approximately 12.5 miles from where the traffic stop occurred.

II.

Coleman filed this action against the City of Port Allen, Chief Smith, and Officer Clark, alleging violations of his constitutional rights pursuant to 42 U.S.C. § 1983 and a state law negligence claim against all the defendants on the grounds that Officer Clark "had a duty to make sure [Plaintiff] was not in danger of dying when he left him on the side of the highway suffering from a diabetic shock." (Doc. 2, ¶ 7).

III.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). The movant, or party seeking summary judgment, bears

2

the burden of showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). At the outset, the Court notes that the face of the complaint does not effectively identify the basis of Plaintiff's Section 1983 claim, nor does the complaint successfully identify present parties as persons to whom the claims are asserted. Rather, the defendants in their motion for summary judgment, as well as the Court, are left with the task of extracting claims from the complaint. With effort, the Court can infer from the complaint a Section 1983 claim for illegal search and seizure based on the allegation that "defendant Marshall commenced to search the vehicle without consent of complainant," although it bears mentioning that there is no party identified as Marshall. (Doc. 2, ¶ 4). Moreover, the complaint fails to identify what claims are asserted against the City of Port Allen and Chief Smith. However, because Plaintiff asserts that he has "suffered for many years with harassment and lack of cooperation from the City of Port Allen Police Department, namely due to Officer Jasmione Clark and Shane Weems," the Court presumes that Plaintiff is attempting to state a claim that the City of Port Allen and Chief Smith negligently hired and failed to train and/or supervise Officer Clark. There is no indication as to who Shane Weems may be.

IV.

A. <u>Constitutional violations as to Officer Clark</u>

As a threshold matter, the Court will first address whether there was a constitutional violation as to Officer Clark. The purported violation appears to be an alleged illegal search and seizure, yet none of the parties fully address this issue in their respective briefings. For a traffic stop to be constitutionally valid, the officer must have an objectively reasonable suspicion that some illegal activity, including a traffic violation, has occurred or is about to occur. *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005). Here, Officer Clark stopped the vehicle for

3

a tint violation in accordance with La. Rev. Stat. Ann. § 32.361.1. During the stop, Officer Clark discovered that Ms. Coleman was driving the vehicle with a suspended license. Additionally, Officer Clark testified that the vehicle did not have proper insurance registration, for which Officer Clark he had the vehicle impounded. (Doc. 32-1, Ex. A.)

It is disputed whether Officer Clark searched the vehicle. (Doc. 36, Ex. C). In the interest of arresting officer safety and evidence preservation that are typically implicated in arrest situations, the Supreme Court has recognized the permissibility of a search incident to arrest exception to the constitutional warrant requirement. *Arizona v. Gant*, 556 U.S. 332, 338-39 (2009). If, however, there is no arrest, there can be no search incident to the stop excepting the provision of a warrant. *Knowles v. Iowa*, 525 U.S. 113, 114 (1998). Similarly, Officer Clark did not place Plaintiff, or any other passenger of the vehicle, under arrest on September 22, 2010. Therefore, he could not have legally searched Plaintiff's vehicle during the stop in question. Whether the search occurred remains at issue, and neither party has supplied undisputed material facts sufficient to prompt summary judgment over the claim that Officer Clark illegally searched Plaintiff's vehicle.

Additionally, the complaint appears to allege that Officer Clark illegally seized Plaintiff's vehicle. Although the tint of the windows and status of vehicular insurance are disputed, it is uncontested that Ms. Coleman was driving with a suspended license, in contradiction of La. Rev. Stat. Ann. § 32:415. (Doc. 31-1, Ex. B). Officer Clark testified that he had the vehicle impounded because Plaintiff failed to show valid automobile insurance, presumably in accordance with La. Rev. Stat. Ann. § 863.1. (Doc. 32-1, Ex. A). In support of Officer Clark's choice to impound the vehicle, regardless of the status of Plaintiff's insurance policy, Defense argues that he validly exercised his discretion because Ms. Coleman was illegally driving with a

4

suspended license. (Doc. 58, p. 3). At the time of this incident, Louisiana law prevented law enforcement officials from impounding a motor vehicle for a first violation, notwithstanding enforcement of La. Rev. Stat. Ann. § 863.1,[1] when neither the Louisiana resident operator, nor the vehicle, present imminent danger to the public. La. Rev. Stat. Ann. § 32:392.1. Repealed by Acts 2012, No. 512 § 1. This prohibition became effective on August 15, 2010, and continued to govern the actions of Port Allen law enforcement officers until August 1, 2012. *Id*. Therefore, Officer Clark could only have exercised his discretion to impound Plaintiff's vehicle if Ms. Coleman, the vehicle, or both presented imminent danger to the public, or perhaps pursuant to La. Rev. Stat. Ann. § 863.1. However, neither party has indicated that Ms. Coleman was not being stopped for a first violation, or that Ms. Coleman or the vehicle posed any imminent danger to the public. Further, the status of Plaintiff's insurance policy remains genuinely disputed. Consequently, the Court cannot grant summary judgment over the claim that Officer Clark unconstitutionally seized Plaintiff's property.

    B. <u>Liability under *respondeat superior*</u>

Contrarily, any claims that Plaintiff may be attempting to assert against the City of Port Allen on the theory of *respondeat superior* must fail because a municipality cannot be held vicariously liable under Section 1983 solely because it employs a tortfeasor. *Monell v. Dep't of Social Services*, 436 U.S. 658, 691 (1978). However, a local government or municipality, such as the City of Port Allen, may be subject to a Section 1983 action where an "official policy or governmental custom is responsible for a deprivation of rights protected by the Constitution."

---

[1] An officer may not have violated La. Rev. Stat. Ann. 32:392.1 by impounding a violator La. Rev. Stat. Ann. 32:863.1, but it remains disputed whether Plaintiff violated the latter. Additionally, following an inquiry made by Monroe Police officer, Major James Fried, regarding the relationship between these two statutes, the Office of the Attorney General responded "…it is the opinion of this office that La. R.S. 32:392.1 prevails. Thus, a police officer cannot impound a vehicle solely due to the failure of the operator to provide documentation of compliance with the compulsory motor vehicle liability insurance laws." La. Att'y Gen. Op. No. 10-0260 (Feb. 10, 2011).

*Bennett v. City of Slidell*, 728 F.2d 762, 766 (5th Cir. 1984). Thus, in order to maintain an action against the City of Port Allen, Plaintiff must "connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Id.* at 767.

The City of Port Allen argues correctly that Plaintiff has not identified any policy that caused his injury. (Doc. 58, p. 7). Rather, Plaintiff points to the City's hiring policy and argues that the City failed to comply with the requirements in the hiring policy, namely not subjecting Officer Clark to a psychological evaluation. However, there is no evidence that this policy is unconstitutional, or that this policy caused a violation of his rights. While Plaintiff is likely arguing that the City *failed* to follow the policy, this is not what *Monell* and its progeny require to prove municipal liability. Thus, on this issue, presuming that Plaintiff made this claim, the Court will grant summary judgment to the Defendants.

C. <u>Section 1983 liability for failure to train and/or supervise</u>

Turning to a failure to train and/or supervise theory, Defendants argue that there is no evidence in the record to support this theory of liability. Under Section 1983, an official is liable for failure to train and/or supervise if the plaintiff shows that (1) the official failed to train or supervise the officer, (2) "there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights;" and (3) this failure "constituted deliberate indifference to the plaintiff's constitutional rights." *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003) (quotations and citation omitted). Plaintiff argues that there is ample evidence that Officer Clark's immediate supervisor filed multiple complaints about Officer Clark's behavior, notably that Officer Clark was not being properly supervised. Relatedly, in light of the minimal amount of relevant evidence timely provided in these proceedings, the Court

6

will consider Plaintiff's documents filed between June 15 and June 17, 2013, in order to effectuate a precise and equitable assessment of the motions.

With respect to Chief Smith, Defendants point out that there were no specific allegations made against him. To the extent that Plaintiff is attempting to raise a Section 1983 supervisory liability claim against Chief Smith, Plaintiff must show that chief Smith was either "personally involved in the acts causing the deprivation of an individual's constitutional rights" or that there was a "causal connection between [Chief Smith's act] and the constitutional violation sought to be redressed." *Harvey v. Andrist*, 754 F.2d 569, 572 (5th Cir. 1985). Plaintiff does not allege that Chief Smith personally acted to deprive him of his constitutional rights. Some causal connection may be shown, however, between Chief Smith's training or supervision of Officer Clark and the two fourth amendment claims against him which the Court did not dismiss, as discussed above. If Plaintiff can show that Officer Clark illegally searched and seized his vehicle, it is reasonable to surmise that a causal connection could be shown between the training and/or supervision of Officer Clark and his choice to search and seize the property. The lacuna of facts which permeates these proceedings, once again, prohibits the Court from granting summary judgment over the section 1983 claim that Chief Smith failed to train and/or supervise Officer Clark to Plaintiff's detriment.

  D. <u>Negligence as to Officer Clark</u>

Plaintiff also alleges that Officer Clark negligently breached his duty of care when he failed to provide transportation or similar assistance to Plaintiff, and is therefore the legal cause of numerous ills which subsequently befell him. The Court recognizes that Officer Clark had a duty to treat Plaintiff as would a reasonably prudent police officer. *Mathieu v. Imperial Toy Corp.*, 94-0952, p. 6 (La. 11/30/94), 646 So.2d 318, 323 (La. 1994). Defendants repeatedly

contend that the damages alleged are too temporally attenuated to Plaintiff's interaction with Officer Clark on September 22, 2010, because Plaintiff's hospitalization occurred "two days later." (Doc. 31-1, p. 14); See also (Doc. 31-1, p. 4), (Doc. 58, p. 4). Defendants are blatantly incorrect in this representation. Plaintiff was hospitalized on September 22, 2010, as provided by the hospital records submitted with defendants' own motion. (Doc. 31-1, Ex. D). It was following the traffic stop when Plaintiff allegedly suffered complications from diabetes, was robbed, and hospitalized. (Doc. 2, ¶ 6); (Doc. 36, p. 2). Notably, the incident which constitutes Plaintiff's alleged damages occurred more than twelve-and-one-half miles away from the traffic stop, at which time Plaintiff tested positive for cocaine and benzodiazepines. Neither party has addressed, however, whether Plaintiff was intoxicated at the time of his diabetic episode or if his twelve-and-one-half mile trek, and alleged ills, were purely the consequence of a mind beleaguered by diabetic ketoacidosis. Numerous facts of Plaintiff's experiences following Officer Clark's seizure of his vehicle on September 22 remain at genuine issue, a predicament which has hardly been assisted by Defendants' factual misrepresentations or Plaintiff's inability to correct or rebut such blatant errors. The factual circumstances of Plaintiff's state law negligence allegations stem from his interaction with Officer Clark on September 22, 2010, and are very likely to form the same case or controversy. *See Exxon Mobil Corp. v. Allapattah Service, Inc.,* 545 U.S. 546, 588 (2005) *citing United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966) ("The state and federal claims must derive from a common nucleus of operative fact."). Further, there are no exceptional circumstances present which persuade the Court that dismissal of supplemental jurisdiction over Plaintiff's state law claim would balance the relevant factors. *Enochs v. Lampasas County*, 641 F.3d 155, 159-60 (5th Cir. 2011).

8

Case 3:11-cv-00652-JJB-RLB   Document 63   07/17/13   Page 8 of 9

## III. Conclusion

City of Port Allen Chief of Police individually, and in his official capacity, Fred Smith's, and Officer Jasmione Clark's motions for summary judgment are hereby GRANTED only as to Plaintiff's Section 1983 *respondeat superior* claim, (Doc. 31), and DENIED at to all other claims. (Docs. 32 & 31).

Signed in Baton Rouge, Louisiana, on the 16th of July, 2013.

**JAMES J. BRADY, DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**